UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JOHN DOE, | § § | |
| Plaintiff, | § § | CIVIL ACTION NO. 1:21-cv-00541-RP |
| v. | § § | JUDGE ROBERT PITMAN |
| SOUTHWESTERN UNIVERSITY and SHELLEY STORY, | § § § § | |
| Defendants. | § | |

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY AND PERMANENT INJUNCTION**

Plaintiff John Doe ("John"), by and through counsel, hereby submits his Reply Brief in support of his Motion for Preliminary and Permanent Injunction (the "Motion") against Defendant Southwestern University ("Southwestern" or the "University").

Southwestern's Opposition[1] is rife with mischaracterizations and omissions. As set forth below, Southwestern misinterprets the meaning of "status quo" and injunctive relief is in fact a proper remedy in John's case. John has more than met his burden of demonstrating a substantial likelihood of succeeding on the merits of his claims. Southwestern has no answer for John's argument that his lost ability to play college golf constitutes irreparable harm and ignores it entirely in attempting to argue to the contrary. Further, Southwestern's claimed public interest factors do not even apply to this matter, and the public interest instead can only be served by the granting of injunctive relief. As the University failed to counter John's arguments that the balance of hardships weighs in his favor, John need not reiterate those claims here.

---

[1] John categorically rejects Southwestern's claim in its Footnote 1 that a copy of "[t]h[e] Motion was not served on [opposing] counsel." *See* ECF #24 at fn. 1. Southwestern was personally served via a process server who delivered to it copies of all documents that had been filed with the Court at that time. John has a copy of all documents served on Southwestern on June 22, 2021 and can make those available to the Court upon request.

**I.      Granting Injunctive Relief Will Properly Preserve the Status Quo.**

Southwestern incorrectly asserts that injunctive relief is improper because such relief would alter the status quo, and further that altering the status quo makes John's relief subject to a higher burden of proof. Southwestern is wrong on both counts. The University's position is expressly refuted by recent and on-point precedent.

"The point of prohibitive injunctive relief is to preserve the last uncontested status between the parties which preceded the controversy." *Ohlensehlen v. Univ. of Iowa*, 2020 U.S. Dist. LEXIS 243194 at *41 (S.D. Iowa Dec. 24, 2020) (internal citation omitted); *see also Ander v. Cal State Univ.*, 2021 U.S. Dist. LEXIS 76990 at *21. (E.D. Cal. Apr. 21, 2021) (noting that injunctive relief seeks to maintain the "status quo", meaning "the last uncontested status which preceded the pending controversy."). "To be sure, it is sometimes necessary to require a party who has recently disturbed the status quo to reverse its actions, but such an injunction restores, rather than disturbs, the status quo ante." *Ohlensehlen* at *41. Thus, reinstating John's student status <u>does not</u> alter the status quo, it simply restores it.

Southwestern is also incorrect that John is required to meet an increased burden of proof showing that "the facts and law clearly favor" his right to injunctive relief. A recent and directly on-point case expressly found that the lower, and typical, standard for injunctive relief applies where a student challenged his forced withdrawal from a university. *See Madej v. Yale Univ.*, 2020 U.S. Dist. LEXIS 58651 at *12-14 (D. Conn. Mar. 31, 2020). Specifically, the court found that the relevant status quo was "the status quo <u>before</u> Yale took the alleged harmful actions." *Id.* at *14 (emphasis in original). The court concluded that, because the applicable status quo was that prior to the student's withdrawal, he was only required to meet the lower burden of proof. *Id.*

Here, too, John seeks to preserve "the last, actual, peaceable uncontested status which preceded" this action, meaning his status as a student prior to his expulsion from Southwestern. *Id.* While Southwestern bemoans the burden on the University to reinstate John as a student, *Ohlensehlen* notes that such an obligation is necessary because Southwestern is the entity that disturbed the status quo through its unlawful and unjustified actions. *Ohlensehlen* at *41. Further, John is required only to prove a substantial likelihood of success, along with the other factors, to receive injunctive relief.

## II. John is Substantially Likely to Succeed on All Claims Against Southwestern.

Rather than directly addressing the merits of John's claims against the University, Southwestern instead incorporates its recently filed Motion to Discuss and offers conclusory statements as to why the claims fail. John fully intends to oppose the Motion to Dismiss but, for purposes of this Reply, it is sufficient to point out the following:

- The University places its policies above the law in claiming jurisdiction over non-party Jane Roe's ("Jane") complaint. Unfortunately for Southwestern, the law is clear: **non-students have no right to pursue claims grounded in Title IX with the accused student's school**. *See Doe v. Brown*, 270 F. Supp. 3d 556 (D.R.I. Sept. 6, 2017) (finding that the "total absence" of a relationship between accuser and accused's university meant that no claim under Title IX could lie because the accuser could not have been denied equal access to education); *see also K.T. v. Culver-Stockton Coll.*, 2016 U.S. Dist. LEXIS 106107 (E.D. Mo. Aug. 11, 2016) (concluding that a claim grounded in Title IX requires that the accused student's conduct systematically interfere with the accuser's right to equal access, which necessarily cannot be present where the accuser is not a student).

- John more than met his low burden of establishing clear procedural irregularities and grave doubts affecting the hearing outcome to demonstrate an erroneous outcome. Southwestern baselessly claims that no procedural flaws have been identified – John directs the University to pages 13 and 14 of his Motion, which describe how Southwestern adjudicated a complaint over which it had no jurisdiction and attempted to substitute its own misguided opinion for that of a grand jury, in violation of its policies. The hearing outcome is also plagued with grave doubt – the Motion to Dismiss does not even address the fact that Jane's claims related to her alleged sexually transmitted infection ("STI") and world record-breaking blood alcohol concentration ("BAC") level were proven false.

4815-1712-4082, v. 1

> There can be no "he-said/she-said" when Jane's claims can be definitively and scientifically proven as false.

- John clearly established the existence of a contract between him and Southwestern, and the University's breach. Southwestern's position that it "is not aware of any Texas case holding that the promulgation of a solitary university policy, as opposed to comprehensive student bulletins or handbooks, creates a contract" is oxymoronic. Naturally, "a solitary university policy" must be part of the "comprehensive student bulletins or handbook" which creates the contract, as John pled. *See* ECF #1 at ¶143; *see also Pacheco v. St. Mary's Univ.*, 2017 U.S. Dist. LEXIS 94510 at *29 (W.D. Tex. June 20, 2017) (noting that the university's guidelines and its code of conduct were part of its contract with the student). John further identified no less than four breaches by Southwestern, and John's damages are unmistakable.

- Southwestern mischaracterizes the holding in *Hux v. S. Methodist Univ.* to claim that a duty of good faith and fair dealing can never exist in this context. *Hux* spoke specifically to the "ordinary student-professor relationship" but did not foreclose that such a duty could exist entirely. 819 F.3d 776 (5th Cir. 2016). This was no "ordinary" relationship and a sister district court has previously found that a fiduciary relationship *could* exist in similar circumstances. *See Colli v. Southern Methodist Univ.*, 2011 U.S. Dst. LEXIS 92073 (N.D. Tex. Feb. 14, 2011).

- To assert that Southwestern did not exhibit extreme and outrageous conduct is to intentionally turn a blind eye and to claim that John has not suffered emotional distress is disdainful. Southwestern ignored Jane's false claim that she contracted an STI, ignored her sensational claim to have a record-breaking BAC, ignored that a grand jury reviewing the same evidence could not even find probable cause, and ignored that it lacked jurisdiction to find John responsible and brand him as a sexual offender. This can only be outrageous conduct and to claim that no emotional distress would result confounds the senses.

- Southwestern once again mischaracterizes John's claims to allege that it did not owe him a duty of care, that it did not act negligently, and further that John did not identify precedent to the contrary. John once again directs the University to pages 21-22 of his Motion, in which John explained that Southwestern had a duty to protect him by verifying Jane's claims before permanently expelling him, as supported by *Doe v. Case Western Reserve Univ.*, 2017 U.S. Dist. LEXIS 142002 at *35 (N.D. Ohio Sept. 1, 2017), *Abbariao v. Hamline University School of Law*, 258 N.W.2d 108, 112-113 (Minn. 1977), and Restatement (Third) of the Law, Torts: Liability for Physical and Emotional Harm, § 40 (20120). There can be no question that Southwestern abandoned this duty and that John was harmed significantly as a result.

Because John is substantially likely to succeed on the merits of the above claims, injunctive relief is necessary and warranted.

### III. The Opposition Entirely Ignores the Irreparable Injury Arising from John's Inability to Play Golf.

Southwestern dedicates significant space to arguing that expulsion and an incorrect finding of sexual misconduct on John's record is not irreparable harm. Such a position, when recalling that Jane's allegations related to her alleged STI and BAC level were definitively proven false and that a grand jury could not find that even the lowest standard of proof was met, is nothing short of offensive.

But more glaring from the Opposition than its insulting belittlement of John's injuries is the fact that it entirely fails to address the damages related to John's inability to complete his collegiate golf career. John's Motion cited extensive case law holding that a student "losing the opportunity to participate in their sport of choice on a continuous and uninterrupted basis" constitutes irreparable harm. *Biediger v. Quinnipiac Univ.*, 616 F. Supp. 2d 277, 291-92 (D. Conn. May 22, 2009); *see also Lazor v. Univ. of Conn.*, 2021 U.S. Dist. LEXIS 99490 at *18-19 (D. Conn. May 26, 2021) (losing the "long-sought opportunity to compete at the highest level of intercollegiate sports" is irreparable harm that is not diluted by even the possibility of transferring, which would result in an "interruption in competition"); *Mayerova v. E. Mich. Univ.*, 2019 U.S. Dist. LEXIS 9373 at *4 (6th Cir. 2019) (noting that "each passing sports season counts as irreparable harm for the affected athletes"); *Portz v. St. Cloud St. Univ.*, 196 F. Supp. 3d 963, 972 (D. Minn. July 25, 2016) (noting that student athletes' "time in college is limited" and forcing them to wait even for the conclusion of litigation would cost them the opportunity to play for a season and constitute irreparable harm). John's lost ability to play golf at Southwestern amounts to irreparable harm and the University does not even attempt to argue to the contrary.

This is not to say that John's other injuries, including a false finding of sexual misconduct tied to his name, a derailed education, and uncertain employment future, are not irreparable in and

5

of themselves, which they are. *See Doe v. Univ. of Cincinnati*, 872 F.3d 393, 407 (6th Cir. 2017) (finding that even a one-year suspension following an unfair hearing would result in reputational injury and irreparable harm); *Doe v. Univ. of Mich.*, 325 F. Supp. 3d 812, 829 (E.D. Mich. July 6, 2018) (concluding that monetary damages were insufficient to remedy immediate threat of expulsion, which "could drastically curtail future educational and employment opportunities"); *see also Doe v. Brandeis Univ.*, 177 F. Supp. 3d 561, 602 (D. Mass. Mar. 31, 2016).

John was just nine credits shy of graduation prior to his abrupt expulsion. Southwestern relies on *Doe v. Texas A&M University*, an outlier, to claim that John's injuries may be compensated with money damages, however its reliance is misguided. *Doe v. Texas A&M University* concerned a student who was **suspended for one year**, not expelled. *See* 2021 U.S. Dist. LEXIS 14114 (S.D. Tex. Jan. 26, 2021). Specifically, the court found that, because the student "may apply for readmission after the suspension period is over", his harm was compensable. *Id.* at *22-23. Of course, John has been expelled permanently with no option for readmission and many cases have found that such actions amount to irreparable harm. *See, e.g. Doe v. Rector & Visitors of George Mason Univ.*, 149 F. Supp. 3d 602, 622 (E.D. Va. Feb. 25, 2016). The harm that John is currently facing is significant and permanent without injunctive relief and, as such, injunctive relief must be granted.

### IV. Upholding a Wrongful Expulsion Harms the Public Interest While Injunctive Relief Will Promote It.

Public interest can only be served by granting John injunctive relief. John does not deny that colleges have "legitimate concerns regarding the safety of the University community." However, John *does* strongly dispute that such concerns are being protected here. John presented incontrovertible proof that he in no way compromised the safety of the Southwestern community and that Jane's claims to the contrary were demonstrably false. Southwestern can have absolutely

no interest in ensuring that a wrongfully expelled student remains punished for an act that he did not commit. The University only reached this result through a gender-biased implementation of its policies, in which it similarly has no interest in maintaining integrity. Indeed, "the public's interest in eradicating sex discrimination in education is compelling." *Ohlensehlen* at \*43, *citing Portz* at 978; *see also Doe v. Wood County Bd. of Educ.*, 888 F. Supp. 2d 771, 778 (S.D. W.V. Aug. 29, 2019) (noting that [t]he public interest is certainly served by promoting compliance with Title IX."). Maintaining John's expulsion and label as a sexual misconduct offender, after the state criminal justice system declined to charge him based on the same evidence, serves no higher purpose. Southwestern is attempting to claim the right to double down on the outcomes of its disciplinary processes, even when those outcomes are demonstrably false. Requiring Southwestern to permit a student that it never should have expelled from returning to class and to accept his tuition cannot be deemed to exceed the harm that is currently facing John under any reasonable interpretation. Consequently, the public interest will be best served by granting John the injunctive relief he seeks.

## V. Conclusion

John reiterates one final time that Southwestern expelled him based on demonstrably false allegations that a Texas grand jury rejected. The University's disciplinary process and sanction under these circumstances was nothing less than a gross miscarriage of justice. John now seeks to remedy Southwestern's mistakes and simply get his life back on track. In light of the foregoing, John respectfully requests that his Motion be granted.

        Respectfully submitted,

        */s/ Kristina W. Supler*
        Kristina W. Supler\*
        Susan C. Stone\*\*
        KOHRMAN, JACKSON & KRANTZ LLP
        1375 E. 9th St., 29th Floor
        Cleveland, OH 44114
        P: (216) 696-8700
        F: (216) 621-6536
        E: scs@kjk.com; kws@kjk.com
        \**Admitted Pro Hac Vice*
        \*\**Motion to Admit Pro Hac Vice pending*

        David Kenneth Sergi (No. 18036000)
        Katherine Frank (No. 24105630)
        SERGI AND ASSOCIATES P.C.
        329 S. Guadalupe St.
        San Marcos, TX 78666
        P: (512) 759-8495
        F: (512) 392-5042
        E: david@sergilaw.com
           katie@sergilaw.com

        *Counsel for Plaintiff John Doe*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing Plaintiff's Reply Brief in Support of Motion for Preliminary and Permanent Injunction was filed electronically on this 16th day of July, 2021.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties not receiving service through the Court's electronic filing system will be served by regular U.S. mail.  Parties may access this filing through the Court's system.

        */s/ Kristina W. Supler*
        Kristina W. Supler

4815-1712-4082, v. 1